UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**DELLA N. LEVINS,**

       **Plaintiff,**

       v.                                Case No. 09-C-1067

**MICHAEL J. ASTRUE,**

       **Defendant.**

## DECISION AND ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING CASE

**I. PROCEDURAL HISTORY**

On October 31, 2005, Della N. Levins ("Levins") filed applications for Disability Insurance Benefits and Supplemental Security Income. (R. 43.) The claims were denied initially on February 3, 2006, and upon reconsideration on August 1, 2006. (R. 43.) Levins requested a hearing, and a hearing was held by way of video conference before an administrative law judge ("ALJ") on November 21, 2008. (R. 43.) On March 27, 2009, the ALJ issued a decision concluding that Levins was not disabled. (R. 43-53.) The Appeals Council denied Levins' request for review on September 16, 2009. (R. 3-6.)

The present action was filed in this court on November 12, 2009 and initially assigned to the Honorable Lynn Adelman. (Docket No. 1.) Following all parties consenting to the full jurisdiction of a magistrate judge, the matter was reassigned to this court for all further proceedings. (Docket No. 9.) On March 23, 2010, Levins filed a motion for summary judgment. (Docket No. 16.) The

Commissioner has responded, (Docket No. 23), and Levins has replied, (Docket No. 25). The pleadings on the plaintiff's motion are now closed, and the matter is ready for resolution.

**II. FACTS**

Levins is morbidly obese and suffers from a variety of health problems including asthma, (R. 205), Type II diabetes, (R. 205), arthritis, (R. 205), hypertension, (R. 213), and pain in her back (R. 198, 202), and left knee, (R. 104-05.) At the time of the hearing before the ALJ she was 41 years old. (R. 315.) She has a HSED, and has previously worked as a certified nursing assistant. (R. 211; 315-16.) During the period of her alleged disability she acted as the sole caregiver for her ill father until he passed away in April of 2008. (R. 211; 333.) She was last employed as a bartender and cook. (R. 316-17.)

With respect to her back pain, tests revealed "[m]ild degeneration of the L2-3 and L4-5 disks" and "[a]dvanced degeneration of the L5-S1 disk with associated slight retrospondylolisthesis." (R. 198.) Her back pain, which she describes as "burning, sharp and sometimes dully or throbbing," may, at times, get as severe as a 9 on a 10 point pain scale and increases with activity such as sweeping the floor. (R. 208.) The pain is sometimes relieved by the use of ice or by switching positions. (R. 208-09.)

Levins had arthroscopic left knee surgery in 1995, (R. 244), following a fall at a prior employer, (R. 330), but her present pain developed much more recently, (R. 269). She does not recall any specific injury triggering the most recent pain. (R. 269.) She does not use a cane, walker, or other assistive device. (R. 207; 335.)

Due to limitations on insurance coverage and her own financial means, Levins has not pursued certain treatment options such as physical therapy. (R. 236.) However, her insurance would cover chiropractic care but Levins stated she was not interested in such treatment. (R. 236.) Further, Levins declined treatment through the use of steroid injections. (R. 236.)

### III. STANDARD OF REVIEW: SUBSTANTIAL EVIDENCE

In addressing the issues raised by Levins, the court is limited to determining whether the ALJ's factual findings are supported by "substantial evidence." Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). The court may not re-weigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute its own judgment for that of the Commissioner. Id.; Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).

The substantial evidence burden is satisfied when the evidence is such that a reasonable mind might accept it as adequate to support a conclusion. Williams v. Apfel, 179 F.3d 1066, 1071 (7th Cir. 1999). Although a mere scintilla of proof will not suffice, Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999), substantial evidence may be something less than the greater weight or preponderance of the evidence, Young v. Sullivan, 957 F.2d 386, 388 (7th Cir. 1992). If the ALJ rejects uncontradicted evidence, reasoning for that rejection must be clearly articulated. Id.; Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's decision rests on the credibility determination, this court will overturn that determination only if it is patently wrong. Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Special deference is appropriate because the ALJ is in the best position to see and hear the witness and to determine credibility. Id. at 435.

When the Commissioner denies social security benefits, the ALJ is required to "build an accurate and logical bridge from the evidence to [his] conclusions" so that a reviewing court may afford the claimant meaningful review of the SSA's "ultimate findings." Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) (citing Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002)); Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002). Further, the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele, 290 F.3d at 940.

Finally, if the ALJ committed an error of law, this court may reverse the Commissioner's decision, regardless of whether it is supported by substantial evidence. Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989).

**IV. DETERMINING DISABILITY: A FIVE-STEP ANALYSIS**

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether Levins was disabled, the ALJ applied the following five step inquiry: (1) whether Levins is currently unemployed; (2) whether Levins has a severe impairment; (3) whether Levins's impairments equates to one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appx. 1 ("Appendix 1"); (4) whether Levins is unable to perform past relevant work; and (5) whether Levins is incapable of performing work in the national economy. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920; Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step, or on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled. Zurowski v. Halter, 245 F.3d 881, 885-86 (7th Cir. 2001) (citing Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)). The claimant bears the burden of proof in the first four steps. Young v. Secretary of Health & Human Servs., 957 F.2d 386, 389 (7th Cir. 1992). If the claimant sustains that burden, at Step 5, the burden shifts to the Commissioner. Id.

The ALJ is required to carefully consider and explain in his or her decision the weight given to the opinions of state agency doctors and consultants. SSR 96-6p.

The ALJ determined that Levins did not engage in substantial gainful activity since May 2005 and that her impairments, in combination, are severe. (R. 45-46.) At Step 3, the ALJ determined that Levins did not meet or medically equal a Listing and thus he proceeded to Steps 4

4

and 5. (R. 46-47.) Relying in part upon the testimony of a vocational expert, the ALJ determined that Levins could not perform her past work, (R. 51), but has the residual functional capacity for sedentary work as, for example, an order clerk, lamp shade assembler, or dowel inspector. (R. 52.)

## V. ANALYSIS

Levins challenges only the ALJ's Step 3 determination that she does not meet or medically equal a listed impairment.

### A. Listing 1.02A

Levins argues that the ALJ erred when he concluded that she did not meet or medically equal Listing 1.02A. (Docket No. 19 at 10-11.) The ALJ rejected Levins' contention that she met or medically equaled this Listing because there was no evidence that Levins was suffering from a "gross anatomical deformity." (R. 46.) Levins contends that in light of SSR 02-1p, the ALJ was obligated to consider whether Levins' obesity might supplant the "gross anatomical deformity" element of the Listing and thus support a conclusion that Levins meets or medically equals Listing 1.02A.

Obesity once was a listed impairment but was removed from the listings effective October 25, 1999. SSR 02-1p. Subsequently, the Social Security Administration issued Social Security Ruling 02-1p outlining how obesity should be considered in a disability determination. "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." SSR 02-1p. Further, obesity, by itself, may be found to meet or be medically equivalent to a listed impairment. Id.

> [I]f the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, *it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria),* with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence.

5

Id. (emphasis added).

> Listing 1.02 states:
>
> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
>> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

The ALJ stated with respect to Listing 1.02A: "This listing is met if there is evidence of pain and stiffness, <u>and</u> gross anatomical deformity, resulting in inability to ambulate effectively. I find the claimant fails to establish the degree of limitation anticipated by the listing. Specifically, there is no evidence of gross anatomical deformity." (R. 46) (emphasis in original). The ALJ continued:

> I specifically considered whether the claimant's obesity might, by itself, be equivalent in severity to a listed condition. I also thought about whether it could elevate the other impairments to listing-level significance. There is no evidence that either of these alternatives applies. . . . While the claimant's representative argues that I should find that obesity is or contributes to a listing-level impairment, the representative has not cited any objective supporting evidence. Further, the State Agency physicians saw the evidence of the claimant's obesity, and did not find a listing-level impairment. For these reasons, I find no basis under Social Security Rules 02-01p to find that the claimant's obesity equals a listing or aggravates other impairments to a listing level.

(R. 46-47) (internal citation omitted).

The court concludes that the ALJ's rejection of the Levins' contention that she met Listing 1.02A on the basis that there was no evidence that she suffered from a gross anatomical deformity was inconsistent with SSR 02-1p and thus was in error. SSR 02-1p, as quoted above, is clear; obesity, if it results in an inability to ambulate effectively, might substitute for the "for the major dysfunction of a joint(s) due to any cause (and its associated criteria)," i.e. all of the requirements set forth in the first paragraph of Listing 1.02. In other words, if obesity qualifies as a substitute,

6

there is no requirement to also find a gross anatomical deformity. Because of his erroneous application of Listing 1.02A vis-à-vis SSR 02-1p, the ALJ did not specifically address whether Levins' obesity resulted in an inability to ambulate effectively. The ALJ's subsequent cursory statement that he considered whether Levins' obesity was equivalent in severity to a listed condition fails to sustain an argument that the ALJ properly applied the listing.

"Though a failure to consider the effect of obesity is subject to harmless-error analysis, the Commissioner has not persuaded [the court] that the error is harmless." Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009) (citing Prochaska v. Barnhart, 454 F.3d 731, 736-37 (7th Cir. 2006); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004)). There is evidence in the record that could support a conclusion that Levins is unable to ambulate effectively, and thus whether Levins' limitations satisfy the definition set forth in 1.00B2b is a question that will have to be addressed on remand.

**B. Listing 1.04A**

Levins concedes that she does not meet Listing 1.04A ("Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord."), but contends that the ALJ failed to properly consider whether she medically equaled Listing 1.04A. (Docket No. 19 at 21-24.) Levins states: "With regard to the listing level severity, the ALJ claimed to have considered 'whether the claimant's obesity might buy [sic] itself, beep of London [sic] severity to a listed condition,' and also 'whether it could elevate the other impairments to a listing level significance.'" (Docket No. 19 at 23 (citing (R. 46)) (typos and gibberish supplied by plaintiff; original reads "be equivalent in").)

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." Barnett

7

v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004). But an ALJ's failure to explicitly refer to a Listing by name does not, by itself, require remand, provided that it the ALJ's decision is sufficient to permit the reviewing court to trace the ALJ's reasoning. See Rice v. Barnhart, 384 F.3d 363, 369-70 (7th Cir. 2004).

Listing 1.04 regarding disorders of the spine is entirely absent from the ALJ's decision and there is nothing within the ALJ's Step 3 analysis to permit the court to conclude that this Listing was nonetheless considered by the ALJ.

The Commissioner responds that remand is not required on this point because the ALJ referred to the evaluations by two state agency physicians where neither found that Levins suffered from a Listing-level impairment. (Docket No. 23 at 9 (citing R. 46-47).)

On this point, the Seventh Circuit's recent comments appear directly applicable: "Two state-agency physicians concluded that [the claimant's] impairments did not meet or medically equal a listing, [(see R. 174-82),] and there was no medical opinion to the contrary. In light of the medical evidence, the ALJ's failure to refer to a specific listing at step three is not a ground for remand in this case." Knox v. Astrue, 327 Fed. Appx. 652, 655 (7th Cir. 2009) (unpublished) (citing Rice v. Barnhart, 384 F.3d 363, 369-70 (7th Cir. 2004); Scheck v. Barnhart, 357 F.3d 697, 701 (7th Cir. 2004)).

Like in Knox, there is no medical opinion in the present record that states that the claimant suffers from a Listing-level impairment. However, contrary to the ALJ's statement, neither is there a medical opinion in the record that Levins does not suffer from a Listing-level impairment. The evaluations the ALJ cites are residual functional capacity assessments by state agency physicians, (R. 174-82); the physicians were not asked and thus did not offer an opinion as to whether Levins medically equaled a Listing.

8

But nonetheless, the ALJ's failure to refer to a Listing does not necessarily require remand. An ALJ is not required to explicitly reference every conceivably applicable Listing and provide a detailed analysis as to why he finds that the claimant's impairments do not meet or medically equal the Listing. This is particularly true when, like here, the claimant is represented by counsel and in the proceedings before the ALJ she referred to only Listing 1.02. (See R. 345.) To hold otherwise would invite claimants to strategically sandbag before the ALJ by explicitly stating that they are alleging disability under only a single Listing only to later allege, should the ALJ's decision be unfavorable, that remand is required because of the ALJ's failure to discuss the potential of medical equivalence of an arguably relevant Listing.

Moreover, even now, Levins has failed to point to any specific medical evidence in the record that suggests she could sustain her burden of demonstrating that she medically equaled Listing 1.04A and specifically the requirement of "nerve root compression" and its associated neuro-anatomic characteristics. Accordingly, the court finds no basis for remand with respect to Levins' claim of error regarding the ALJ's failure to consider whether Levins medically equaled Listing 1.04A.

## VI. CONCLUSION

For the reasons set forth above, the court shall remand this matter for rehearing. Upon rehearing, the ALJ must consider whether Levins meets or medically equals Listing 1.02A in accordance with SSR 02-1p in light of Levins' obesity.

**IT IS THEREFORE ORDERED** that this case is hereby **remanded** to the Commissioner for rehearing in accordance with this decision.

Dated at Milwaukee, Wisconsin this 10th day of May 2010.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge